1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PRESTON ALONZO HOWELL,

11              Petitioner,                 No. CIV S-02-1376 GEB JFM P

12        vs.

13   A.A. LAMARQUE,

14              Respondent.                 FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding in propria persona with an application for

17   a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1998 conviction

18   on charges of assault with a deadly weapon and two counts of rape and an enhancement charge

19   for petitioner's personal use of a knife during the rape, and the sentence of thirty-three years to

20   life in prison imposed thereon on June 19, 1998.  Petitioner raises multiple claims in his petition,

21   filed June 20, 2002, that his prison sentence violates the Constitution.

22                              FACTS[1]

23              Shortly after midnight on May 6, 1997, [petitioner] and Jacqueline
              A., who had known each other for approximately a month, walked to

24   _____

25        [1]  The facts are taken from the opinion of the California Court of Appeal for the Third
     Appellate District in People v. Howell, No. C029917 (August 5, 1999), a copy of which is
26   attached as Exhibit #D to Respondent's Answer, filed May 23, 2003.

several stores which refused to sell them beer due to the late hour.  They returned to Jacqueline's uncle's apartment, where she lived.  She went inside to use the bathroom and then came back out to talk to [petitioner].  At that point, he was on the porch of an empty house down the street.  She joined him and they sat on the porch steps talking.  He was angry because he believed her uncle had cheated him out of some money.  He grabbed her, held a sharp object to her throat, and told her he wanted "some wet pussy."  He threatened to kill her if she resisted.

[Petitioner] dragged Jacqueline to a dark part of the porch.  At his direction she lowered her pants.  He donned a condom and began raping her.  She tried to resist by hitting him, but he bit her hand.  He shoved his hand in her mouth, causing her to gag for air.  He kept his hand in her mouth while he raped her and she struggled to breathe.  As a result of the choking, she involuntarily urinated and defecated.

Following this first offensive act of sexual intercourse, Jacqueline rolled over and dislodged [petitioner's] hand from her mouth.  She caught her breath and bit him to keep his fingers out of her mouth.[2]  He removed the condom and tossed it aside.  He rolled her back onto her back and told her to raise up her legs.  She complied out of fear.  He raped her again and eventually ejaculated.

After the second rape, [petitioner] said he should not have done what he did and claimed he was sorry.  He started to walk away and then took off running.  Jacqueline ran to her uncle's apartment and he telephoned the police.

A medical examination noted marks on the inside of Jacqueline's throat and scratches on her tongue.  Her neck had a cut with dry crusted blood on it.  Her nose was scratched and she had cuts on her fingers consistent with bite marks.  There was sperm on her vagina.  Police found stains and a condom on the porch where the attacks occurred.  Testing of the parties' swab samples indicated that [petitioner] was within the population who could have "donated" the semen found on Jacqueline.  Testing of her clothing revealed her own blood and human feces.

[Petitioner's] mother testified that petitioner works as a handyman and frequently complains of work-related cuts to his hands.  [Petitioner] did not testify.

(People v. Howell, slip op. at 2-3.)

---

[2] [Petitioner] claims the "turning and biting appears to have preceded the first act of intercourse."  He is wrong.  Jacqueline testified, "After he finished, you know, the first intercourse, then he wanted to stick his hand back in my mouth.  That's when I bit him."

PROCEDURAL HISTORY

Petitioner appealed his conviction to the California Court of Appeal, Third Appellate District on December 4, 1998, on the ground that the state trial court sentenced him in error. (Answer, Ex. B.)  On February 5, 1999, the state court of appeal affirmed the judgment. (Answer, Ex. D.)  Petitioner filed a petition for review on his claim of sentencing error on September 8, 1999.  (Answer, Ex. E.)  The California Supreme Court denied the petition without comment on October 20, 1999.  (Answer, Ex. F.)

On January 19, 2000, petitioner filed a petition for writ of habeas corpus in the Sacramento County Superior Court alleging there was insufficient evidence to support his conviction.  (Answer, Ex. G.)  On February 9, 2000, the superior court denied the petition because petitioner had failed to timely raise the issue in his direct appeal, citing In re Dixon, 41 Cal.2d 756, 759 (1953), reaffirmed in In re Harris, 5 Cal.4th 813, 829 (1993).  (Answer, Ex. H.)

On April 11, 2000, petitioner filed an amended petition in which he added claims of ineffective assistance of counsel, the prosecution's failure to carry its burden of proof, perjury by a government witness and improper admission of hearsay evidence.  (Answer, Ex. I.)  The superior court denied the amended petition on May 1, 2000, finding it was an improper second petition under In re Clark, 5 Cal.4th 750, 797 (1993).  (Answer, Ex. J.)

On June 5, 2000, petitioner filed a petition in the state court of appeal raising his ineffective assistance of counsel claim and the claims contained in his April 11, 2000 amended petition.  (Answer, Ex. K.)  On June 15, 2000, the court of appeal denied the petition without comment.  (Answer, Ex. L.)

On June 27, 2000, petitioner filed a petition for writ of habeas corpus in the California Supreme Court raising a single claim that insufficient evidence supported the verdict. (Answer, Ex. M.)  On October 25, 2000, the California Supreme Court denied the petition, citing In re Lindley, 29 Cal.2d 709, 723 (1947).

/////

3

On November 3, 2000, petitioner filed a federal petition for writ of habeas corpus, alleging insufficient evidence and five additional issues, including ineffective assistance of counsel, failure to carry the burden of proof, perjury and hearsay.  (CIV S-00-2454 LKK PAN P ).[3]  On August 7, 2001, Case No. CIV S-00-2454 LKK PAN P was dismissed based on a finding that petitioner had not exhausted his claims in state court.  (Id.)

On August 22, 2001, petitioner filed his third habeas petition in the Sacramento County Superior Court.  (Answer, Ex. O.)  The superior court denied the third petition on September 19, 2001.  (Answer, Ex. P.)  The superior court found that petitioner's third petition did not present the court with any newly-discovered evidence and that his "explanations for his failure to present all of his claims in a single, timely petition [were] insufficient to justify both the repetitive filing and the delay."  (Answer, Ex. P. at 3.)  The superior court also found that petitioner had not stated facts sufficient to bring him within any exceptions to the rules and thus his third petition was procedurally barred pursuant to In Re Clark, 5 Cal.4th 750 (1993).

On November 5, 2001, petitioner filed a second habeas petition in the California Court of Appeal.  (Answer, Ex. Q.)  On November 8, 2001, the appellate court denied the second petition without comment.  (Answer, Ex. R.)

Petitioner filed his second habeas petition in the California Supreme Court on December 4, 2001.  (Answer, Ex. S.)  The California Supreme Court denied the second petition citing In Re Clark, 5 Cal.4th 750 (1993), In Re Waltreus, 62 Cal.2d 218 (1965), In re Dixon, 41 Cal.2d 756, 759 (1953), In re Lindley, 29 Cal.2d 709, 723 (1947), and In re Swain, 34 Cal.2d 300, 304 (1949).  (Answer, Ex. T.)

On June 20, 2002, petitioner filed the instant action.  Respondent filed an answer on May 23, 2003 and petitioner filed a traverse on July 28, 2003.

/////

---

[3]  A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

1       ANALYSIS

2   I.   Standards for a Writ of Habeas Corpus

3            Federal habeas corpus relief is not available for any claim decided on the merits in

4   state court proceedings unless the state court's adjudication of the claim:

5            (1) resulted in a decision that was contrary to, or involved an
             unreasonable application of, clearly established Federal law, as
6            determined by the Supreme Court of the United States; or

7            (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
8            State court proceeding.

9   28 U.S.C. § 2254(d).

10           Under section 2254(d)(1), a state court decision is "contrary to" clearly established

11  United States Supreme Court precedents if it applies a rule that contradicts the governing law set

12  forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable

13  from a decision of the  Supreme Court and nevertheless arrives at different result.  Early v.

14  Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

15           Under the  "unreasonable application" clause of section 2254(d)(1), a federal

16  habeas court may grant the writ if the state court identifies the correct governing legal principle

17  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

18  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply

19  because that court concludes in its independent judgment that the relevant state-court decision

20  applied clearly established federal law erroneously or incorrectly.  Rather, that application must

21  also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166,

22  1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

23  question, is left with a 'firm conviction' that the state court was 'erroneous.'")            The

24  court looks to the last reasoned state court decision as the basis for the state court judgment.

25  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a decision on

26  the merits but provides no reasoning to support its conclusion, a federal habeas court

5

1  independently reviews the record to determine whether habeas corpus relief is available under

2  section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

3  II.  Petitioner's Claims

4      In his petition, petitioner raises numerous claims, some of which are numbered,

5  some of which are assigned the same number for different claims, and some of which are

6  unnumbered.  As noted by respondent, many of these alleged claims are, in fact, arguments, i.e.

7  that the claims were exhausted or that the court should not consider the claim procedurally

8  defaulted.  (Petition at 6 (claim 9); 7 (claims 1-2; 3-5; 31-36.)  The court has chosen to address

9  petitioner's claims by topic, rather than by claim number, but has reviewed the petition in toto.

10      A.  Sentencing Errors

11      Petitioner raises claims of sentencing errors.  He claims that the trial court erred in

12  imposing consecutive sentences.[4]  He claims the trial court failed to state reasons to justify the

13  imposition of full term consecutive sentences under Cal. Pen. Code § 667.6, subdivision (c).

14  Petitioner claims that the trial court violated due process by improperly sentencing him under state

15  law because the trial court increased his sentence due to its consideration and use of Cal. Penal

16  Code § 667.61(e)(4) Sex Offenders Life Sentence, and the use of Cal. Penal Code § 12022.3(a)

17  Sex Offenses Additional Sentence, with the use of Cal. Penal Code § 667.6 Persons Previously

18  Convicted for Sex Offenses.  Petitioner contends this resulted in a sentence of 33 years to life

19  which included an "illegal" use of an enhancement or prior.  Petitioner claims that his due process

20  rights were violated by the manner in which his sentence was determined.  Further, petitioner

21  contends he was sentenced pursuant to an invalid statute.  Petitioner contends he was sentenced to

22  33 years to life in prison as a result of an improper application of California's Three Strikes Law.

23

24      [4] Petitioner was sentenced under California's "one strike" law to 15 years to life in prison
    on count 3.  (CT 219.)  Petitioner was also sentenced to eight years (upper term) on count 2, plus
25  ten years for using a knife, said 18 year term to be served consecutively to the 15 year term.  (CT
    218.)  Petitioner's sentence for count 1 was stayed pursuant to Cal. Penal Code § 654.  (CT 220-
26  21.)

Petitioner raised only the first two sentencing claims in his direct appeal.  The California Supreme Court rejected petitioner's first two sentencing claims without comment.  The last reasoned opinion addressing these two claims was issued by the Third District Court of Appeal for the State of California.  The state appellate court rejected petitioner's claim that Cal. Penal Code Section 667.6, subdivision (d) did not require consecutive sentences because the two rapes were committed on the same occasion; because of that finding, the court refused to consider petitioner's claim that the trial court did not make the proper findings required by Cal. Penal Code Section 667.6, subdivision (c).  The state appellate court stated:

> The trial court ran count 3 consecutive to count 2, as follows: "It appearing to me that this was a course of conduct so far as [section] 667 [sic] is concerned, it appears to me that there was time to reflect in the condition [sic] of the offenses related to Counts Two and Three, and that the [petitioner] could well stop the act at that time, but his persistence was just as determined, even after he'd completed the initial act of intercourse.  I think this is the kind of conduct that the [L]egislature had in mind when they provided for repeat offenders and, therefore, this sentence – the sentence will run . . . [c]onsecutively."
>
> "[O]nce the trial judge resolves the issue of 'separate occasions,' an appellate court is 'not at liberty to overturn the result unless no reasonable trier of fact could decide that there was a reasonable opportunity for reflection.'" (*People v. Pena* (1992) 7 Cal.App.4th 1294, 1314, quoting *People v. Corona* (1988) 206 Cal. App.3d 13, 18, fn.2.)  [Petitioner] contends no reasonable trier of fact could have found he had a reasonable opportunity for reflection. We disagree.
>
> Contentions similar to [petitioner's] have been considered in recent cases.  In *Corona, supra,* 206 Cal.App.3d 13, two episodes of sexual offenses were separated by a five-minute period in which the defendant left the scene of the offenses.  (*Id.* at p. 15.)  This court found "no grounds to fault an inference that in this interval defendant had a reasonable opportunity to reflect upon his actions." (*Id.* at pp. 17-18.)
>
> In *Pena, supra,* 7 Cal.App.4th 1294, a rape and an oral copulation were separated only by the time it took the perpetrator to reposition the victim.  (*Id.* at p. 1299.)  Section 667.6, subdivision (d) did not mandate consecutive sentences, because the defendant "simply did not cease his sexually assaultive behavior, and therefore, could not have 'resumed' sexually assaultive behavior." (*Id.* at p. 1316.)

In *People v. Plaza* (1995) 41 Cal.App.4th 377, the second offense was separated from the first by a move from a bathroom to a bedroom; the third offense was separated from the second by listening to an answering machine and punching holes in a wall; the fourth offense was separated from the third by five minutes of physical and verbal abuse; and the fifth offense was separated from the fourth by three telephone calls and two sex crimes of which the defendant was not convicted.  A finding that each crime occurred on a separate occasion within the meaning of section 667.6, subdivision (3) was upheld.  (*Id.* at pp. 384-385.)

Finally, in *Irvin, supra,* 43 Cal.App.4th 1063[,] the trial court was directed to consider on remand which of 20 sexual offense acts occurred on separate occasions within the meaning of section 667.6, subdivision (d).  Irvin explained that neither Corona, Pena nor Plaza requires a change of location or an obvious break in the perpetrator's behavior.  (*Id.* at p. 1070.)  That is because "a forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter.  Such a sexual assault consisting of multiple types of sex acts committed against the victim is not motivated by sexual pleasure.  Instead, it is frequently intended to degrade the victim.  Sexual acts, such as those committed by [petitioner], are the antithesis of a consensual sexual encounter and should not be viewed the same way.  Therefore, at sentencing a trial court could find a defendant had a 'reasonable opportunity to reflect upon his or her actions' even though the parties never changed physical locations and the parties 'merely' changed positions."  (*Id.* at p. 1071.)

Viewed in the light most favorable to the judgment (*People v. Carpenter* (1997) 15 Cal.4th 312, 387, the evidence suggests [petitioner] committed two violent sexual acts, separated by an interval in which Jacqueline turned to the side, successfully caught her breath and bit [petitioner] in order to prevent his further gagging her with his fist, and in which he removed the condom he had been wearing, threw it to the side, rolled Jacqueline back onto her back, ordered her to raise her legs and resumed raping her.  (*Cf. Irvin, supra,* 43 Cal.App.4th at p. 1070.)  A rational trier of fact could conclude the sexual offenses were separated, first, by Jacqueline's overcoming [petitioner's] effort to gag her into submission, and second, by [petitioner's] responsive efforts to reposition Jacqueline for further abuse and to dispose of his condom.  The trial court was not compelled to find a singular sexual assault that never stopped (*Pena, supra,* 7 Cal.App.4th at p. 1316), but could find that [petitioner] had a reasonable opportunity for reflection during that interval (*id.* at p. 1314.)

[Petitioner] argues his "illogical act of removing the condom demonstrates that [his] logical faculties did not have a

/////

8

reasonable opportunity for reflection during the time period in question, . . . ."  We disagree.

[Petitioner's] "illogical act" suggests he did not reflect upon his actions, or perhaps did not act in turn upon his reflection. However, section 667.6, subdivision (d) does not require actual reflection.  Rather, it requires a reasonable opportunity for reflection, which [petitioner] had; whether he used it is immaterial.

Contrary to [petitioner's] argument, the trial court was not compelled to find that the physiological aspects of his forcible sexual activity obliterated his opportunity for reflection.  Indeed, the evidence suggests he reflected during the second rape because he apologized for his conduct immediately thereafter. [Petitioner] was properly sentenced to a consecutive term on count 3.

(People v. Howell, slip op. at 6-8.)

The probation officer listed the circumstances in aggravation:

(1) [Petitioner] reportedly threatened to kill the victim and to cut her throat, disclosing a high degree of cruelty and viciousness;

(2) [Petitioner] used a deadly weapon in the commission of the offenses, to wit, a knife [Potential enhancement].

(3) [Petitioner] has engaged in violent conduct which indicates a serious danger to society.

(4) [Petitioner's] prior convictions as an adult and sustained Petitions in juvenile delinquency proceedings are numerous and of increasing seriousness.

(5) [Petitioner] has served four prior prison terms.

(6) [Petitioner] was on parole for violation of Section 245(a)(1) P.C. when the crime was committed.

(7) [Petitioner's] prior performance on probation as well as parole has been unsatisfactory.

(CT 192.)  The probation officer noted no circumstances in mitigation.  (CT 192.)  The probation officer recommended that "the commission of the crime in Count 1 occurred during a continuous course of criminal conduct where [petitioner] harbored a single criminal objective and therefore sentencing should be stayed pursuant to Section 654 of the Penal Code."  (CT 192.)  The probation officer recommended that the "crimes in count 2 and 3 involved separate acts of

1   violence." (CT 193.)   He recommended the court find the offenses in counts 2 and 3 "were

2   committed against a single victim but were committed on separate occasions, (time to pause and

3   reflect), and [could] be sentenced to a full, separate and consecutive term pursuant to Section

4   667.6(d) P.C." (CT 193.)

5             The trial court addressed the issue of sentencing as follows:

6             I find that the circumstances in aggravation far exceed any
             circumstances in mitigation.  The [petitioner] threatened to kill the
7             victim, used a deadly weapon, engaged in violent conduct.  He's on
             prior conviction record, served prison terms.  He was on parole.  I
8             do – hard to find any mitigating circumstances in those events.

9             Also, the victim in this case was particularly vulnerable.  She had
             looked upon the [petitioner] as a friend.  She had a certain trust in
10            their relationship.  They talked for quite some time before this
             occurred, indications are that for some unknown reason, he took
11            advantage of her, of a really true and frightening reign of terror,
             including this act of which he was convicted.
12
             As to Count Two, the sentence will be 15 years to . . . life with a
13            minimum of 15 years before eligibility for parole.[5]  That is . . . to
             the sentence, Count Two sentence, eight years upper term for
14            aggravation that I have discussed plus 10 years for the fact that he
             was on parole when this offense was committed, for total of 18
15            years.

16            The sentence with respect to Count One will be three years in state
             prison.  That will be stayed pursuant to Section 664 of the Penal
17            Code.

18            It appearing to me that this was a course of conduct so far as 667 is
             concerned, it appears to me that there was time to reflect in the
19            condition of the offenses related to Counts Two and Three, and that
             the [petitioner] could well stop the act at that time . . . , but his
20            persistence was just as determined, even after he'd completed the
             initial act of intercourse.  I think this is the kind of conduct that the
21            legislature had in mind when they provided for repeat offenders and,
             therefore, . . . the sentences will run consecutively.
22
    (RT 208-09.)
23
    /////
24

25            [5] A review of the court minutes and Abstract of Judgment suggests that the trial judge
    misspoke during the sentencing hearing and intended to impose the 15 year to life sentence as to
26   count three, rather than count two.  (CT 8, CT 218-19, RT 208.)

1         A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

2  some transgression of federal law binding on the state courts.  Peltier v. Wright, 15 F.3d 860, 861

3  (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985), citing Engle v. Isaac,

4  456 U.S. 107, 119 (1982); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is

5  unavailable for alleged errors in the interpretation or application of state law.  Langford v. Day,

6  110 F.3d 1380, 1389 (9th Cir. 1996); Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln v.

7  Sunn, 807 F.2d 805, 814 (9th Cir.1987).  Thus, "it is not the province of a federal habeas corpus

8  court to reexamine state-court determinations on state-law questions."  Smith v. Stewart, 140 F.3d

9  1263, 1272 (9th Cir.)(quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  Of particular

10  importance here is the principle that "[a]bsent a showing of fundamental unfairness, a state court's

11  misapplication of its own sentencing laws does not justify federal habeas relief."  Christian v.

12  Rhode, 41 F.3d 461, 469 (9th Cir. 1994); see also Miller v. Vasquez, 868 F.2d 1116, 1118-1119

13  (9th Cir. 1989).

14         The category of such errors that violate "fundamental fairness" has been defined

15  "very narrowly."  Estelle v. McGuire, 502 U.S. at 72-73 (quoting Dowling v. United States, 493

16  U.S. 342, 352 (1990).  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due

17  Process Clause has limited operation."  Id.

18         The instant claim is based on an alleged violations of state law only.  Therefore,

19  this court must determine whether a violation of fundamental fairness was involved, giving rise to

20  a due process violation.  See Christian v. Rhode, 41 F.3d at 469; Cacoperdo v. Demosthenes, 37

21  F.3d 504, 507 (9th Cir. 1994), cert. denied, 514 U.S. 1026 (1995) ("The decision whether to

22  impose sentences concurrently or consecutively is a matter of state criminal procedure and is not

23  within the purview of federal habeas corpus."); Branch v. Cupp, 736 F.2d 533, 536 (9th Cir.

24  1984), cert. denied, 470 U.S. 1056 (1985) (a trial court's failure to comply with state law

25  requirement that the court state its reasons for imposing consecutive sentences does not rise to the

26  level of a federal habeas claim).

1       The trial court was not required to give a statement of reasons for implementing

2   discretionary sentencing under Cal. Penal Code section 667.6(c) because full-term, consecutive

3   sentences were mandatory under Cal. Penal Code section 667.6(d)[6] based on the trial judge's

4   express finding that petitioner had time to reflect between the two acts of intercourse, and that

5   petitioner could have stopped at that time, but instead chose to rape the victim again.  Moreover,

6   the trial judge expressly found that the circumstances in aggravation far exceeded any

7   circumstances in mitigation because petitioner threatened to kill the victim, used a deadly weapon,

8   engaged in violent conduct, had a prior conviction record, had previously served prison terms and

9   was on parole at the time of the instant offense.

10      Based on the this record, this court cannot find that the trial court's decision to

11  impose consecutive sentences violated fundamental fairness.  There was support in the record for

12  the trial court's sentencing decision.  For these reasons, petitioner is not entitled to habeas relief

13  with respect to this claim.

14      Moreover, even if the trial judge had exercised discretion to impose consecutive

15  sentences and failed to cite reasons in the record, this claim would also fail.  Penal Code

16  § 667.6(c) provides that generally the court has discretion to impose full, separate, and

17

18      [6]  At the time of sentencing, Cal. Penal Code § 667.6, subdivision (d) provided, in
    relevant part:

19              A full, separate, and consecutive term shall be served for
                each violation of . . . paragraph (2) . . . of subdivision (a) of Section
20              261 . . . if the crimes involved separate victims or involve the same
                victim on separate occasions.

21              In determining whether crimes against a single victim were
                committed on separate occasions under this subdivision, the court
22              shall consider whether, between the commission of one sex crime
                and another, the defendant had a reasonable opportunity to reflect
23              upon his or her actions and nevertheless resumed sexually
                assaultive behavior.  Neither the duration of time between crimes,
24              nor whether or not the defendant lost or abandoned his or her
                opportunity to attack, shall be, in and of itself, determinative on the
25              issue of whether the crimes in question occurred on separate
                occasions.

26  Id.

1 consecutive terms "whether or not the crimes were committed during a single transaction." People
2 v. Craft, 41 Cal.3d 554, 558 (1986).  Sentencing pursuant to Cal. Penal Code § 667.6(c) due to
3 conviction of certain offenses is discretionary.  See, People v. Jamison, 150 Cal.App.3d 1167
4 (1984).  When the court sentences under subsection (c), however, it must state its reasons for
5 imposing consecutive sentences. The court must also state its reasons for sentencing under this
6 provision rather than under the principal/subordinate scheme of Cal. Penal Code § 1170.1(a).
7 However, an alleged constitutional violation must contain an allegation that the actual length of
8 the sentence is in excess of that permitted by state law. An allegation that the trial court failed to
9 state its reasons for choosing § 667.6(c) rather than § 1170.1 does not appear to state a claim.  A
10 trial court may choose either section.  If it pronounces a sentence that is not in excess of state law,
11 then there has been no constitutional violation.  The absence of an explanation is not a violation of
12 due process and the decision of whether to impose concurrent or consecutive sentences is a matter
13 of state criminal procedure.  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994).  Thus,
14 petitioner's claim that he was denied due process of law because the trial judge imposed
15 consecutive sentences without an adequate statement of reasons also fails.

16     Petitioner's claims that his sentence was somehow in error or "illegally" enhanced
17 also fail.  The allegation that petitioner raped the victim and used a deadly weapon in the
18 commission of the rape, qualified petitioner for punishment under Cal. Penal Code § 667.61(b).
19 The trial court was not required to find petitioner had been previously convicted of a sex offense
20 under Cal. Penal Code § 667.61(a), which requires an additional element and carries a harsher
21 penalty (25 years to life).  This claim must fail.

22     Petitioner's underlying sentence was not enhanced by prior convictions; he was
23 found guilty of three offenses:  use of a deadly weapon in the commission of a rape and two
24 separate acts of rape.  The charging information contained allegations under both Cal. Penal Code
25 §§ 12022.3 and 667.61.  (CT 9-11.)  The special allegations were found to be true by the
26 /////

1   jury for each count of rape.  (CT 171-73.)  Thus, petitioner's claims concerning wrongful

2   enhancements should be denied.

3          Petitioner appears to also contend that he sustained multiple punishments in

4   violation of Cal. Penal Code § 654.[7]  However, § 654 does not prohibit multiple punishment for

5   separate sex crimes committed pursuant to the same intent and objective.  People v. Perez, 23

6   Cal.3d 545, 552 (1979).  California Penal Code § 667.61[8] specifically contemplates its use in

7   conjunction with Cal. Penal Code §§ 12022.3 and 667.6, thus state sentencing law was not

8   violated.

9          Petitioner's claim that the trial court violated his due process rights by failing to

10  apply a clear and convincing evidence standard at sentencing also fails.  Sentencing within the

11  statutory guidelines must be proved by a preponderance of the evidence.  McMillan v.

12  Pennsylvania, 477 U.S. 79, 91 (1986); Harris v. United States, 536 U.S. 545 (2002)(Apprendi

13  does not overrule McMillan).  In the instant case, petitioner was found guilty on all three counts

14  beyond a reasonable doubt, which exceeds the clear and convincing evidence standard.  Thus, this

15  claim must also fail.

16         Petitioner also claims that he was sentenced under Cal. Penal Code § 667.6 before

17  it was fully effective, alleging it did not become effective until 1999.  (Petition at 59.)  However,

18  petitioner is mistaken.  Section 667.6 was enacted in 1979 and fully in effect before petitioner's

19  trial.  People v. Siko, 45 Cal. 3d 820, 822 (1988).

20

21         [7]  The pertinent portion of Cal. Penal Code § 654 provides:  "(a) An act or omission that
    is punishable in different ways by different provisions of law shall be punished under the
22  provision that provides for the longest potential term of imprisonment, but in no case shall the act
    or omission be punished under more than one provision. An acquittal or conviction and sentence
23  under any one bars a prosecution for the same act or omission under any other."  (Cal. Penal
    Code § 654(a).)
24
           [8]  "Penal Code section 667.61 mandates an indeterminate sentence of either 25 years (id.,
25  subd. (a)) or 15 years to life (id., subd. (b)) when a defendant is convicted of certain forcible sex
    offenses committed under specific aggravating circumstances."  People v. Jones, 25 Cal.4th 98,
26  103-07 (2001).

1          Petitioner's claim that application of the Three Strikes Law to his sentence violated

2   his due process also fails because petitioner was not sentenced pursuant to the three strikes law.

3   To the extent petitioner raises an Eighth Amendment challenge to his sentence, his claim must

4   also be rejected on the merits.  Petitioner was sentenced to 33 years to life.  While this sentence

5   was indeed severe, "outside the context of capital punishment, successful challenges to the

6   proportionality of particular sentences will be exceedingly rare."  Solem v. Helm, 463 U.S. 277,

7   289-90 (1983) (internal alternations and emphasis omitted)(defendant convicted of merely

8   drawing a "no account" check for $100.00).

9          " '[O]nly extreme sentences that are grossly disproportionate to the crime' violate

10  the Eighth Amendment."  Cacoperdo, 37 F.3d at 507 (quoting United States v. Bland, 961 F.2d

11  123, 129 (9th Cir.), cert. denied, 113 S.Ct. 170 (1992)).  To determine proportionality, a court

12  must examine:  "(1)  'the gravity of the offense and the harshness of the penalty';  (2) 'the

13  sentences imposed on other criminals in the same jurisdiction'; and may include (3) 'the sentences

14  imposed for commission of the same crime in other jurisdictions.' "  Cacoperdo, 37 F.3d at 507

15  (quoting Solem, 463 U.S. at 290-92).  Petitioner's sentence is not disproportionate to his crimes.

16  Petitioner was found to have committed two acts of rape while using a knife.  The trial judge

17  noted the aggravating factors cited in the probation report, and also found there were no

18  mitigating factors to consider.  Based on the crime and the factors considered by the trial judge,

19  petitioner's sentence is not grossly disproportionate.  Thus, the other factors listed in Solem need

20  not be addressed.  See Cacoperdo, 37 F.3d at 508.

21          In light of the above, the state court's rejection of petitioner's sentencing claim for

22  relief was neither contrary to, nor an unreasonable application of, controlling principles of United

23  States Supreme Court precedent.  Petitioner's claims of sentencing error also do not state a federal

24  claim.  In addition, after a review of the record of the sentencing proceedings, this court finds no

25  federal constitutional error in connection with petitioner's sentence.  See Hudson v. Myers, 757

26  F.Supp. 1072 (N.D. Cal. 1991)(evidence supported determination that defendant raped victim on

1  two separate occasions within meaning of California statute mandating imposition of full

2  consecutive sentences when defendant has sexually assaulted victim on separate occasions).

3  Accordingly, petitioner's claims of sentencing errors should be denied.

4  　　　　B. Insufficient Evidence

5  　　　　　　Petitioner claims that there was insufficient evidence to support his conviction.  In

6  a related claim, petitioner alleges that the prosecution failed to carry its burden of proof.

7  Petitioner appears to argue that the prosecution failed to carry its burden of proof because it did

8  not produce documentary evidence in support of a witness' testimony.  (Petition at 24.)  However,

9  petitioner does not identify the witness nor the document.  Petitioner has not alleged that the

10  prosecution failed to meet one or all of the elements of the crimes charged.  Because this court

11  finds, infra, that there was sufficient evidence to support the conviction, it follows that the

12  prosecution carried its burden of proof.

13  　　　　　　Respondent contends that the insufficiency of the evidence claim is barred by

14  procedural default.

15  　　　　　　The doctrine of procedural default precludes federal court review of a federal claim

16  rejected by a state court "if the decision of that court rests on a state law ground that is

17  independent of the federal question and adequate to support the judgment."  Coleman v.

18  Thompson, 501 U.S. 722, 729 (1991).

19  　　　　　　　　To be deemed adequate, the state law ground for decision must be
　　　　　　　　well-established and consistently applied.... State rules that are too
20  　　　　　　　　inconsistently or arbitrarily applied to bar federal review generally
　　　　　　　　fall into two categories: (1) rules that have been selectively applied
21  　　　　　　　　to bar the claims of certain litigants ... and (2) rules that are so
　　　　　　　　unsettled due to ambiguous or changing state authority that applying
22  　　　　　　　　them to bar a litigant's claim is unfair.

23  Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003) (internal citations omitted).  "If the court

24  finds an independent and adequate state procedural ground, 'federal habeas review is barred

25  unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or

26  demonstrate that the failure to consider the claims will result in a fundamental miscarriage of

1   justice.'"  Bennett, 322 F.3d at 580 (quoting Noltie v. Peterson, 9 F.3d 802, 804- 05 (9th

2   Cir.1993) (additional citations omitted)).

3            Procedural default is an affirmative defense that must be pleaded and proved by

4   respondents.  See Bennett, at 584-85.  Once the state pleads the defense, the petitioner has the

5   burden of placing the defense "in issue."  Id. at 585.  "The petitioner may satisfy this burden by

6   asserting specific factual allegations that demonstrate the inadequacy of the state procedure,

7   including citation to authority demonstrating inconsistent application of the rule."  Id.  If the

8   petitioner meets his burden, the ultimate burden of proof on the defense is with the state.  Id.

9            There is no reasoned state court opinion on petitioner's insufficiency of the

10   evidence claims.  The California Supreme Court rejected his insufficiency of the evidence claim

11   not raised on direct appeal by citing In re Lindley, 29 Cal.2d 709 (1947).  A citation to Lindley

12   stands for the proposition that habeas corpus review may not be used to (1) retry issues of fact or

13   the merits of a defense; (2) to consider the sufficiency of the evidence; and (3) to review the trial

14   courts rulings with respect to the admission or exclusion of evidence.  Id.  Ninth Circuit cases

15   have interpreted citations to Lindley to mean that the claims are exhausted, Kim v. Villalobos, 799

16   F.2d 1317 (9th Cir.1986), and procedurally barred, Hughes v. Hughes, 268 F.2d 864, 871 (9th

17   Cir.1959).

18            Lindley holds that habeas corpus is not ordinarily available to retry issues of fact or

19   the merits of a defense, the sufficiency of the evidence, evidentiary rulings, or other procedural

20   errors.  Because insufficiency of the evidence was the sole claim raised in the habeas petition

21   denied on Lindley grounds, it is clear the Supreme Court meant to apply the Lindley bar to the

22   insufficiency of the evidence claim.  Thus, the procedural default rests on independent and

23   adequate state grounds and is sufficient to preclude federal collateral review.  Calderon v. U.S.

24   Dist. Ct., 96 F. 3d 1126, 1131 (9th Cir. 1996).  Accordingly, Lindley operates as a procedural bar

25   under the circumstances of this case.

26   /////

1           For the foregoing reasons, the court concludes that petitioner's insufficiency of the

2  evidence claim is procedurally barred.

3           However, even assuming, *arguendo*, the court could reach the merits of this claim,

4  it would also fail.  When a challenge is brought alleging insufficient evidence, federal habeas

5  corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the

6  light more favorable to the prosecution, no rational trier of fact could have found proof of guilt

7  beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Under Jackson, the

8  court must review the entire record when the sufficiency of the evidence is challenged on habeas.

9  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d

10  722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to 'resolve

11  conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

12  facts to ultimate facts."  Jackson, 443 U.S. at 319.  "The question is not whether we are personally

13  convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that

14  these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas

15  court determines sufficiency of the evidence in reference to the substantive elements of the

16  criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16.

17           A review of the record reflects there was sufficient evidence for a rational jury to

18  find petitioner guilty as charged.  The victim testified she had known petitioner for about a month,

19  through her uncle.  (RT 32.)  She testified that on May 6, 1997, she and petitioner had walked to

20  the liquor store, then returned to her house.  (RT 33-34.)  The victim went inside her home for

21  about fifteen to twenty minutes, and when she came out, petitioner was down the street at an

22  empty house.  (RT 34-35.)  The victim and petitioner sat on the steps of the empty house and

23  talked for about twenty minutes.  (RT 36.)  She testified that petitioner told her that her uncle and

24  her uncle's girlfriend had taken money from petitioner and petitioner was angry about that "[a]t

25  some point."  (RT 36.)

26  /////

1    The victim testified that petitioner then put something to her throat and told her he
2  was going to kill her if she didn't do what he said.  (RT 37.)  The victim testified that she couldn't
3  tell what petitioner had put to her throat, but it felt like a knife, or something sharp.  (RT 37.)
4  Petitioner put his hand in her mouth and dragged her up on the porch of the empty house.  (RT 36-
5  37.)  On cross-examination, the victim stated that petitioner's whole hand was down her throat
6  and she was gagging for air.  (RT 68.)  The victim testified that she tried to fight and scream while
7  petitioner was dragging her, but with petitioner's hand in her mouth she could not speak.  (RT 37.)
8  On cross-examination, the victim confirmed that petitioner's hand was constantly in her mouth
9  during the first act of sexual intercourse.  (RT 69.)  She testified that she involuntarily urinated
10  and defecated because petitioner had his hand down her throat.  (RT 44.)

11    She testified that petitioner had a condom on when he first put his penis into her
12  vagina.  (RT 39.)  She said she tried to hit petitioner with her left hand but he bit it.  (RT 40.)
13  When shown a pictures of her hand that had been taken at the hospital after the alleged rape, the
14  victim confirmed the pictures depicted bite marks on her fingers; she testified the pictures showed
15  where petitioner bit her.  (RT 40-41.)

16    The victim clarified on cross-examination that she could not breathe until she
17  turned over on her side and then bit petitioner's hand to keep him from putting his fingers back in
18  her mouth.  (RT 69.)  The victim said she bit his hand "when he released his hand out of my
19  mouth."  (RT 38.)  The victim confirmed that after she rolled over she then rolled back to her
20  back.  (RT 74.)  Petitioner told her to raise her hip and her legs up.  (RT 43-44.)  The victim
21  testified petitioner threatened to "slice her throat" if she did not do what he asked.  (RT 44.)

22    The victim testified that at some point petitioner stopped, removed the condom and
23  threw it to the side.  (RT 41.)  The victim identified a picture of a condom recovered from the
24  scene.  (RT 41-42.)

25    Physician's Assistant George Anderson testified that the victim reported two
26  incidents of penile penetration, and that she was incontinent of urine and feces when petitioner

19

1    choked her with his hands inside her mouth.  (RT 100.)  Anderson testified that the victim

2    reported that petitioner used a condom during the first episode of penetration, but removed it for

3    the second episode.  (RT 100.)

4           Anderson reported a small linear mark on the back of the victim's throat, some

5    small scratches on her tongue, and a perpendicular mark just under her jaw line.  (RT 97.)

6    Anderson also noted a scratch mark on the victim's nose and cut marks on her left middle finger

7    which he testified were consistent with bite marks.  (RT 98.)  Anderson testified that the victim

8    complained of pain in her lip, tongue and throat area.  (RT 97-98.)  Although Anderson noted no

9    injuries in the vaginal area, he stated such findings were not infrequent post sexual assault and

10   opined that was usually because people who have been threatened or feared for their lives

11   cooperate with the assailant.  (RT 99.)

12          Officer Wyley testified that he noted two cuts to the fingers of petitioner's left

13   hand on May 7, 1997.  (RT 124.)  Officer Wyley testified he found an unopened Premium brand

14   condom in petitioner's wallet while petitioner was being interviewed at the jail.  (RT 126.)

15   However, he admitted he had taken no effort to compare this condom to the condom recovered at

16   the crime scene.  (RT 126.)

17          Shanin Sullivan, criminalist in the area of serology, testified that the tests she

18   performed put petitioner in the one plus category, meaning that petitioner could have been the

19   donor of the semen found on the swabs taken from the victim, but confirmed that PGM sub-type

20   one plus one occurs forty-three percent of the time in the black population.  (RT 140.)  No DNA

21   testing was performed.  (RT 151.)

22          Mary Hansen, a supervisor/criminalist with the Sacramento County Crime Lab

23   performed tests and determined that the victim's blood was on the scarf, T-shirt and a foreign

24   material sample from the sexual assault kit.  (RT 156-57.)  Ms. Hansen's tests detected feces on

25   the panties, overalls and on the T-shirt.  (RT 158.)

26   /////

1    After reviewing the record independently, this court concludes that a rational trier

2 of fact could have found proof of petitioner's guilt beyond a reasonable doubt of assault with a

3 deadly weapon and two counts of rape.  This court's role, on collateral review, is not to second-

4 guess the jury verdict.  Although it was a closer question as to whether petitioner's sexual assault

5 of the victim should have been construed as one single act of rape rather than two separate acts of

6 rape, resulting in two separate sentences as punishment, there was sufficient evidence for the jury

7 to make such a finding.  Accordingly, petitioner's claims that there was insufficient evidence to

8 support his conviction, or that the prosecution failed to meet its burden of proof, should be denied.

9    C.  Procedural Default as to Petitioner's Remaining Claims

10    There is no reasoned state court opinion on any of petitioner's remaining claims

11 herein.  The California Supreme Court rejected the rest of the claims petitioner raises in the

12 instant petition by citing In Re Clark, 5 Cal.4th 750 (1993), In Re Waltreus, 62 Cal.2d 218 (1965),

13 In re Dixon, 41 Cal.2d 756, 759 (1953), In re Lindley, 29 Cal.2d 709, 723 (1947), and In re Swain,

14 34 Cal.2d 300, 304 (1949).  (Answer, Ex. T; compare November 30, 2001 petition filed as Ex. S

15 to Answer with instant petition filed June 20, 2002.)

16    In re Clark holds that, as a general rule, an untimely habeas petition should be

17 summarily dismissed.  Id. at 797.  Waltreus holds that "habeas corpus ordinarily cannot serve as a

18 second appeal."  Waltreus, 62 Cal. 2d 225.  However, the Waltreus rule does not bar federal

19 review.  Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Calderon v. United States District Court

20 (Bean), 96 F.3d 1126, 1131 (9th Cir. 1996).  Because of these conflicting citations, this court

21 cannot ascertain whether the denial was based on independent and adequate state grounds.  "[A]

22 procedural default based on an ambiguous order that does not clearly rest on independent and

23 adequate state grounds is not sufficient to preclude federal collateral review."  Siripongs v.

24 Calderon, 35 F.3d 1308, 1317-18 (9th Cir.1994); see also Morales v. Calderon, 85 F.3d 1387,

25 1392 (9th Cir.1996).  Accordingly, the court will address the merits of petitioner's remaining

26 claims.

D. Ineffective Assistance of Counsel

Petitioner raises numerous claims of ineffective assistance by his previous public defender, his defense counsel and his appellate counsel.

In order to prevail on his claim of ineffective assistance of counsel, petitioner must show two things, an unreasonable error and prejudice flowing from that error. First petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 688 (1984). The court must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. at 690. "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." United States v. Ferreira-Alameda, 815 F.2d 1251 (9th Cir. 1986).

Second, petitioner must prove prejudice. Strickland at 693. To demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. The focus of the prejudice analysis is on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. It has been recognized that "the adversarial process will not function normally unless the defense team has done a proper investigation." Siripongs v. Calderon (Siripongs II), 133 F.3d 732, 734 (9th Cir. 1998)(citing Kimmelman, 477 U.S. at 384). Therefore, counsel must, "at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995)

1   (quoting <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations

2   omitted).  On the other hand, where an attorney has consciously decided not to conduct further

3   investigation because of reasonable tactical evaluations, his or her performance is not

4   constitutionally deficient.  <u>See</u> <u>Siripongs II</u>, 133 F.3d at 734; <u>Babbitt v. Calderon</u>, 151 F.3d 1170,

5   1173 (9th Cir. 1998); <u>Hensley v. Crist</u>, 67 F.3d 181, 185 (9th Cir. 1995).  "A decision not to

6   investigate thus 'must be directly assessed for reasonableness in all the circumstances.'" <u>Wiggins</u>,

7   539 U.S. at 533 (quoting <u>Strickland</u>, 466 U.S. at 691).  <u>See</u> <u>also</u> <u>Kimmelman</u>, 477 U.S. at 385

8   (counsel "neither investigated, nor made a reasonable decision not to investigate"); <u>Babbitt</u>, 151

9   F.3d at 1173-74.  A reviewing court must "examine the reasonableness of counsel's conduct 'as of

10   the time of counsel's conduct.'"  <u>United States v. Chambers</u>, 918 F.2d 1455, 1461 (9th Cir. 1990)

11   (quoting <u>Strickland</u>, 466 U.S. at 690).  Furthermore, "'ineffective assistance claims based on a

12   duty to investigate must be considered in light of the strength of the government's case.'" <u>Bragg</u>

13   <u>v. Galaza</u>, 242 F.3d 1082, 1088 (9th Cir. 2001) (quoting <u>Eggleston v. United States</u>, 798 F.2d 374,

14   376 (9th Cir. 1986)).  <u>See</u> <u>also</u> <u>Hayes v. Woodford</u>, 301 F.3d 1054, 1070 (9th Cir. 2002).

15                   1. <u>Previous Public Defender (at Preliminary Hearing)</u>

16          Petitioner contends that his previous public defender, JoAnn Harris, delayed his

17   case, caused the magistrate to invoke California Evidence Code § 352 as a result of the delay, and

18   failed to take certain steps that petitioner alleges caused him to testify "to the People's

19   Information" at the preliminary hearing.  (Petition at 38.)  Petitioner also complains that the public

20   defender's "cross-examination and compound questioning turned the court's attention away from

21   the real focus the law, or had the people in the information showed that [he] committed charged

22   offense."  (Petition at 39.)

23          Petitioner states that there were many witnesses referenced in the police reports

24   and claims his public defender did not follow-up with these witnesses in an effort to corroborate

25   whether petitioner accompanied the victim into the Alhambra store or other stores, and to

26   /////

1  establish timing.  (Petition at 38-39.)  Petitioner also appears to contend that surveillance camera

2  footage would have been available and should have been obtained by counsel.  (Petition at 38.)

3        However, petitioner has failed to demonstrate how any of this would have helped his case.

4  He has provided no affidavits or declarations from witnesses who did or did not see him with the

5  victim that evening.  At the preliminary hearing, the victim testified that no one accompanied her

6  and petitioner to the stores (CT 45), no one was near petitioner when she came back out of the

7  house after they had returned from the stores (CT 51), and while she and petitioner were sitting on

8  the steps of the empty house immediately prior to the rape, the victim testified no one was

9  walking by on the sidewalks or driving by in cars (CT 58).  It appears no one saw the assault take

10  place, so unless petitioner had a witness who placed him elsewhere, it is difficult to imagine what

11  other testimony the public defender might have obtained that would have changed the outcome of

12  the preliminary hearing.  While the timing of their trips to certain stores might have been relevant

13  to challenge the victim's credibility in terms of how she recalled the events of that late evening

14  and early morning, it would not have had any impact on her testimony concerning the acts that

15  took place on the steps and porch of the empty house.  Petitioner has provided no affidavits or

16  declarations from witnesses placing him at a scene other than with the victim at the time of the

17  sexual assault.  Thus, petitioner has failed to show counsel was ineffective by failing to take the

18  actions petitioner suggests.

19        Petitioner has also failed to demonstrate how he was prejudiced by the delay

20  allegedly caused by the public defender.  Petitioner claims his due process rights were violated by

21  the delay and that the delay was not in his best interest.  (Petition at 38.)

22        After the preliminary hearing, petitioner agreed to waive time, and trial was set for

23  October 9, 1997.  (CT 105-06.)  That date was later continued to November 20, 1997.  (CT 113-

24  14.)  Apparently the case was then continued to January 26, 1998, as minutes reflect it was the

25  first day of a jury trial.  (CT 115.)  Difficulties between petitioner and his previous public

26  defender erupted on January 27, 1998.  (CT 116; RT 3.)  The trial judge required petitioner to

1  meet with his counsel outside the presence of the court.  (RT 3.)  When court reconvened,

2  petitioner's public defender announced that petitioner moved for appointment of new counsel.

3  (RT 5.)  After hearing petitioner's motion *in camera*, the trial judge found there was

4  "irreconcilable conflict where ineffective representation may be a result" (RT 20) and granted

5  petitioner a new attorney.  (RT 20.)  Both the prosecution and petitioner personally objected to

6  further continuation of the trial date, but the trial judge granted a sixty day continuance of the trial

7  date to allow new counsel to prepare petitioner's defense.  (RT 28.)  Jury trial began on May 18,

8  1998 (CT 117) and verdicts were entered on May 21, 1998 (CT 171).

9          Petitioner has failed to demonstrate how this delay violated his rights.  He was

10  experiencing difficulties with the public defender and would have been prejudiced by having to

11  proceed to trial without benefit of any counsel.  In any event, petitioner has not shown how the

12  outcome of this proceeding would have been different had his case gone to trial on January 27,

13  1998, rather than four months later.

14          Petitioner has also failed to show how the delay caused the magistrate to invoke

15  California Evidence Code § 352.[9]  During the public defender's cross-examination of the victim

16  during the preliminary hearing, the prosecution objected that the cross-examination was "just

17  going over the same" ground.  (CT 88.)  The magistrate agreed and sustained the objection.  (CT

18  88.)  Later, the magistrate advised petitioner's counsel that he would soon invoke 352, noting

19  court had been in session two and a half hours.  (CT 98.)  The magistrate stated counsel was

20  asking a lot of questions that were not particularly relevant, focusing on discovery, and repeating

21  information, and directed counsel to ask her most important questions.  (CT 99.)  This exchange

22  was not related to the delay of the trial date and does not demonstrate that petitioner's previous

23  public defender was ineffective under Strickland.

24  ────────────

25      [9]  California Evidence Code § reads as follows:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue
26  prejudice, of confusing the issues, or of misleading the jury."  Id.

1    Petitioner has not alleged any acts of the public defender, either before, during or

2  after the preliminary hearing that forced him to testify or to concede any facts set forth in the

3  information.  Petitioner did not testify at trial.  Thus, petitioner has not provided any facts to

4  support his claim that the public defender was ineffective in this regard.

5    Petitioner has also failed to show how the public defender's cross-examination and

6  compound questioning had any impact on the outcome of the preliminary hearing.  At the

7  preliminary hearing, the victim testified, *inter alia*, that she knew petitioner, that petitioner

8  committed the rape, that he used a knife, that there were two separate instances of vaginal

9  penetration and that he dragged her onto the porch by placing his hand down her throat.  (CT 20,

10  24-31.)  Based on this testimony alone the magistrate could find sufficient probable cause to hold

11  petitioner to answer.

12    2.  Defense Counsel

13    Petitioner contends defense counsel failed to object to the "prejudicial testimony of

14  Officer Tracy Chilson," (Petition at 23) and failed to object to the District Attorney's statement

15  regarding the 911 call.  (Petition at 23.)  In support of these claims, petitioner states he could not

16  confront prosecution witnesses because "witness was not made available prior to or at trial, to

17  petitioner or his attorney, to properly prepare said case for trial." (Petition at 23.)  Petitioner

18  recounts no attorney misconduct; indeed, he appears to claim the witness was not made available

19  to his attorney, either.  (Petition at 23.)  However, Officer Chilson testified at trial (RT 115-17)

20  and defense counsel cross-examined him.  (RT 117-21.)  Petitioner provided no facts or argument

21  in support of his claim concerning the 911 call.  These conclusory claims are insufficient to prove

22  defense counsel was ineffective.

23    Petitioner further claims defense counsel failed to investigate or introduce

24  information central to petitioner's defense.  (Petition at 40.)  Petitioner alleges that police officers

25  ignored department procedures, police officers removed items before crime scene investigators

26  were called, the victim's uncle went into the area, that police changed their initial report, and that

1   the Alhambra store would have recorded petitioner or the victim being there at 12:30, 12:45 or

2   1:00 a.m. (Petition at 43.) Petitioner contends the latter statement could be proven false because

3   that store closes at 11:00 p.m. (Id.) Petitioner contends this information would demonstrate that

4   no rape occurred during the time frame set forth in the charging information. (Id.) Petitioner

5   appears to argue that if defense counsel could have proven that the victim lied about the time, her

6   credibility would have been hurt such that petitioner would have been found not guilty. (Petition

7   at 43.)

8          However, petitioner has presented no declarations or affidavits from witnesses that

9   support his self-serving statements concerning the victim's alleged incorrect testimony concerning

10  the timing of events that late evening and early morning. In addition, as noted above, he has not

11  explained how any deviation in time would serve to refute the victim's direct testimony that she

12  knew petitioner, that he used a knife and threatened to kill her, or that he dragged her on to the

13  porch and raped her twice. Criminalist Sullivan corroborated that petitioner was a possible donor.

14  (RT 130, 132-22, 140.) Criminalist Hansen testified that the victim's clothes tested positive for

15  her own blood and feces (RT 154-58.), which corroborated the victim's testimony. The

16  physician's assistant also corroborated salient points of the victim's testimony. (RT 100.)

17  Petitioner has failed to demonstrate how variations in time surrounding trips to the stores prior to

18  the rape would have changed the outcome of this proceeding, thus failing the prejudice prong of

19  Strickland.

20          3. Appellate Counsel

21          Petitioner raises several claims of ineffective assistance of appellate counsel:

22  failure to claim insufficient evidence on appeal; failure to introduce evidence "central" to

23  petitioner's defense, including criminalist's testimony that allegedly excluded petitioner as a

24  donor; and failure to adequately represent petitioner on his prior habeas corpus petition.

25          The Strickland standards apply to appellate counsel as well as trial counsel. Smith

26  v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

1  However, an indigent defendant "does not have a constitutional right to compel appointed counsel

2  to press nonfrivolous points requested by the client, if counsel, as a matter of professional

3  judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983).

4  Counsel "must be allowed to decide what issues are to be pressed." Id.  Otherwise, the ability of

5  counsel to present the client's case in accord with counsel's professional evaluation would be

6  "seriously undermined." Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998)

7  (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even

8  particularly good appellate advocacy.")  There is, of course, no obligation to raise meritless

9  arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a showing of

10 deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a

11 weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this context,

12 petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on

13 appeal.  Miller, 882 F.2d at 1434, n.9.

14        In the instant case, as noted above, there was sufficient evidence to support the

15 conviction.  Accordingly, appellate counsel was not ineffective for failing to raise this claim on

16 appeal.

17        Petitioner claims that criminalist Hansen testified that petitioner was excluded as a

18 possible donor.  However, this misstates Hansen's testimony. Criminalist Hansen testified that

19 blood and feces were found on certain items of the victim's clothing.  (RT 156-57; 158.)

20 Criminalist Sullivan testified that petitioner was a possible donor.  (RT 140.)  Thus, appellate

21 counsel was not ineffective for failing to raise this claim on appeal.

22        Petitioner's claim that appellate counsel failed to adequately represent petitioner on

23 his prior habeas corpus petition must also fail.  Habeas petitions are collateral to the criminal

24 appeals process.  Petitioner's appellate counsel was therefore not responsible for filing a habeas

25 petition on petitioner's behalf or assisting petitioner with said filing.

26 /////

1    Petitioner has failed to demonstrate either incompetence or prejudice with respect

2   to this claim.  Appellate counsel's decision to reject certain claims and to press only claims with

3   more merit was "within the range of competence demanded of attorneys in criminal cases."

4   McMann v. Richardson, 397 U.S. 759, 771 (1970).  Petitioner has failed to show he would have

5   prevailed on appeal had appellate counsel properly preserved any of these issues.  Further, as

6   discussed above, his claims of ineffective assistance of trial counsel lack merit.  Thus, petitioner's

7   claims of ineffective assistance of appellate counsel also fail.

8    Accordingly, petitioner's claims of ineffective assistance of counsel should be

9   denied.

10   D.   Alleged Perjury

11    Petitioner claims two officers committed perjury in petitioner's trial:  Officer Tracy

12   Chilson and Officer Aaron Wyley.

13    "[A] conviction obtained by the knowing use of perjured testimony is

14   fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false

15   testimony could have affected the judgment of the jury."  United States v. Agurs, 427 U.S. 97, 103

16   (1976).  The same result obtains when the prosecutor, although not soliciting false testimony,

17   allows it to go uncorrected when it appears.  See Napue v. Illinois, 360 U.S. 264, 269 (1959); see

18   also United States v. LaPage, 231 F.3d 488, 492 (9th Cir.2000) (if prosecutor knows that his

19   witness has lied, he has a constitutional duty to correct the false impression of the facts).

20    There are two components to establishing a claim for relief based on the

21   introduction of perjured testimony at trial.  First, the petitioner must establish that the statements

22   were false.  United States v. Polizzi, 801 F.2d 1543, 1549-50 (9th Cir. 1986).  Second, the

23   petitioner must demonstrate that the prosecution knowingly used the perjured testimony.  Id.; see

24   also Morales, 388 F. 3d at 1180.  Mere speculation regarding these factors is insufficient to meet

25   petitioner's burden.  United States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991).  See Marcella v.

26   United States, 344 F.2d 876, 880 (9th Cir. 1965) ("Before a sentence may be vacated on the

1   ground of perjured testimony, the movant must show that the testimony was perjured and that the

2   prosecuting officials knew at the time such testimony was used that it was perjured.")

3                  1.   Alleged Perjury - Officer Chilson

4            Petitioner alleges Officer Chilson committed perjury by falsifying a statement that

5   "put petitioner there at the time of the alleged reported incident."  (Petition at 25.)  In support of

6   this claim, petitioner states:

> Officer T. Chilson on May 6, of 1997, at 3:00 a.m., responded to a
> 911 call and contacted a J. Anderson, to report [an incident] that had
> just occurred.  Officer Chilson took and submitted his report on
> Anderson's statement, in Officer[] T. Chilson submitted
> information he [writes] Anderson; PRESTON walks to the corner to
> talk with two guys and she heard one say she's running to her
> uncles, officer T. Chilson testified and gave the Court, Defense and
> the jury the impression that he had not talked to Anderson.

12   (Petition at 25.)

13            Petitioner has not claimed that this alleged perjury violated his constitutional

14   rights, therefore, habeas relief cannot be granted.  The statements attributed to Officer Chilson by

15   petitioner appear to be those written in Officer Chilson's report and were not statements Chilson

16   made at trial.  (RT 115-22.) Officer Chilson reviewed his report to refresh his recollection, but his

17   report was not admitted into evidence herein.  Because the challenged statement was not admitted

18   at trial, no error occurred.

19                  2.   Alleged Perjury - Officer Wyley

20            Petitioner also claims Officer Wyley committed perjury at trial.  (Petition at 30.)

21   Petitioner provides the following in support of this claim:

> Officer Wyley testified that he was[] present during the interview of
> petitioner on May 7, 1997, (RT 124), 2-9.  That petitioner had two
> fairly fresh beginning to scab over cuts on petitioner['s] pinky
> finger near the bottom on the top side and the forefinger of
> petitioner['s] (RT 124 13-34) left hand (RT 126, 4-7) that "he" had
> pictures taken of petitioner's hand at that time.  That he found in
> petitioner's wallet during his search an unopened [premium] brand
> condom that there was a condom found at the scene, that's what
> drew his attention to the condom, this is requested intake, "sobriety"

> nurse prepare a kit off petitioner, that he could not determine
> whether petitioner's cut[s] were 'clean or dirty.'

(Petition at 30.)

Petitioner has again not claimed that this alleged perjury violated his constitutional rights, therefore, habeas relief cannot be granted.  In addition, petitioner has failed to specifically identify what portions of Officer Wyley's testimony were inaccurate.  Officer Wyley did testify as petitioner claims.  (RT 123-27.)  On redirect examination, Officer Wyley also testified that blood, saliva and hair samples were taken from petitioner and booked into evidence, following standard procedure in rape cases.  (RT 128-29.)  Petitioner has not demonstrated how any of Officer Wyley's statements were false.

In addition, petitioner has failed to demonstrate that Officer Wyley's testimony could have affected the judgment of the jury.  Officer Wyley's testimony was limited to verifying petitioner had cuts on his hand, a condom in his wallet and had given samples for routine testing.  Petitioner's defense counsel pointed out that no one compared the condom in petitioner's wallet to the condom recovered at the crime scene and petitioner's mother testified that petitioner often cut his hands during his work as a handyman.  (RT 162-63; 165.)  In light of the victim's testimony above, it is unlikely this testimony, even if false, would have affected the jury's judgment.

3. Conclusion

Petitioner's allegations wholly fail to make out a case of perjury and even less a case where the prosecutor knowingly used perjury.  Petitioner's claims that Officers Chilson and Wyley committed perjury should be denied.

E.  Alleged Hearsay Testimony

Petitioner also claims that it was error to admit hearsay testimony by Officer Tracy Chilson.

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."  Estelle v. McGuire, 502 U.S. at 67.  Because federal

1  habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for

2  federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate

3  due process.  Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000), cert. denied, 532 U.S. 984

4  (2001); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999), cert. denied, 531 U.S. 995 (2000);

5  Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  The improper admission of evidence

6  does not violate the Due Process Clause unless it is clearly prejudicial and "rendered the trial

7  fundamentally unfair."  Kealohapaulole v. Shimoda, 800 F.2d 1463, 1466 (9th Cir.1986).

8         There was no state error here.  Petitioner again claims Officer Chilson's testimony

9  placed petitioner with the victim.  A review of Officer Chilson's testimony demonstrates no such

10  statement.  (RT 115-22.)  This claim should be denied.

11     F.  Right to Confront Witnesses

12        Petitioner contends he was deprived of the right to confront witnesses and/or to

13  cross-examine witnesses.  (Petition at 8, 53-54.)  In support of this claim, petitioner argues that no

14  evidence was presented that petitioner was at the store, at the scene of the crime, that when he was

15  arrested he was not in possession of a weapon, and that none of his fingerprints, blood, semen or

16  hair were found at the scene.  (Petition at 54.)  Petitioner contends no physical evidence tied him

17  to the instant crime.  In his ineffective assistance of counsel claim, petitioner also states that he

18  could not confront prosecution witnesses relating to the matters at trial, witness [sic] was not

19  made available prior to or at trial to petitioner or his attorney so they could properly prepare case

20  for trial.  (Petition at 23.)

21        The Confrontation Clause of the Sixth Amendment guarantees the right of an

22  accused in a criminal prosecution "to be confronted with the witnesses against him."[10]  The right

23  of confrontation is applicable to state as well as federal criminal proceedings.  Pointer v. Texas,

24

25     [10]  A witness is considered to be a witness "against" a defendant for purposes of the
26  Confrontation Clause if his testimony "is part of the body of evidence that the jury may consider
   in assessing his guilt."  Cruz v. New York, 481 U.S. 186, 190 (1987).

380 U.S. 400 (1965).  The right to confront witnesses "means more than being allowed to confront

the witness physically."  <u>Davis v. Alaska</u>, 415 U.S.308, 315 (1974).  "'The main and essential

purpose of confrontation is to secure for the opponent the opportunity of cross-examination.' "  <u>Id.</u>,

at 315-316.  <u>See also</u> <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678 (1986).  The Confrontation

Clause requires as a prerequisite to the admissibility of testimonial evidence not only that the

declarant be unavailable, but also that the defendant have had a prior opportunity to

cross-examine.  <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct. 1354, 1374 (2004).

However, petitioner has not identified by name any witness he was allegedly

refused access to.  Petitioner's defense counsel cross-examined the victim as well as all the

prosecution witnesses.  Thus, petitioner has not provided sufficient facts to plead a confrontation

clause violation.  Rather, it appears petitioner is again arguing there was insufficient evidence to

support his conviction.  As noted above, the victim's testimony was sufficient evidence.  The

victim's credibility is not at issue here.  <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995).  This claim

should be denied.

G.  <u>Jury Instructions</u>

Petitioner raises two claims of jury instruction error.  After setting forth the

applicable legal principles, the court will analyze these claims in turn below.

1.  <u>Legal Standards</u>

In general, a challenge to jury instructions does not state a federal constitutional

claim.  <u>See</u> <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456

U.S. 107, 119 (1982)); <u>Gutierrez v. Griggs</u>, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to

warrant federal habeas relief, challenged jury instructions "cannot be merely 'undesirable,

erroneous, or even "universally condemned,"' but must violate some due process right guaranteed

by the fourteenth amendment."  <u>Prantil v. California</u>, 843 F.2d 314, 317 (1988) (quoting <u>Cupp v.</u>

<u>Naughten</u>, 414 U.S. 141, 146 (1973)).  To prevail on such a claim petitioner must demonstrate

"that an erroneous instruction 'so infected the entire trial that the resulting conviction violates due

1    process.'" <u>Prantil</u>, 843 F.2d at 317 (quoting <u>Darnell v. Swinney</u>, 823 F.2d 299, 301 (9th Cir.

2    1987)).  <u>See also</u> <u>Estelle</u>, 502 U.S. at 72.  In making its determination, this court must evaluate the

3    challenged jury instructions "'in the context of the overall charge to the jury as a component of the

4    entire trial process.'"  <u>Prantil</u>, 843 F.2d at 817 (quoting <u>Bashor v. Risley</u>, 730 F.2d 1228, 1239

5    (9th Cir. 1984)).  Where the challenge is to a refusal or failure to give an instruction, the

6    petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is

7    less likely to be prejudicial than a misstatement of the law."  <u>Henderson v. Kibbe</u>, 431 U.S. 145,

8    155 (1977).  <u>See also</u> <u>Villafuerte v. Stewart</u>, 111 F.3d 616, 624 (9th Cir. 1997).

9          2.  <u>Failure to Instruct</u>

10          Petitioner claims his due process rights were violated by the trial court's failure to

11    sua sponte instruct the jury.  (Petition at 56.)  However, petitioner does not state what jury

12    instructions should have been given.  In addition, the information petitioner provides in support of

13    this claim is incorrect.  (Petition at 56.)  For example, petitioner claims the criminalists excluded

14    petitioner as a possible donor and found there was no semen.  (Petition at 56.)  However, the

15    criminalist testified that she did find semen and did not exclude petitioner as a possible donor.

16    (RT 133, 140.)  Petitioner appears to argue that the jury was misled by the verdict forms, but he

17    does not explain how or specifically cite any defective portion of the verdict form.  Petitioner

18    argues that the convictions must be reversed because there is no way to tell if the jury applied the

19    correct burden of proof, but he has not demonstrated what in the record suggests the burden of

20    proof was lessened or how the jury was misled.  Petitioner appears to renew his contentions that

21    he was convicted on insufficient evidence, which this court will not revisit here.  <u>See</u> § B, <u>supra</u>.

22    This claim is without merit.

23          3.  <u>Improper Instruction on Burden of Proof</u>

24          Petitioner claims that the jury instructions given "allowed the jury to convict

25    petitioner without proof beyond a reasonable doubt of every fact necessary to constitute the

26    charged crimes."  (Petition at 58.)  In support of his claim, petitioner appears to contend the

                                                    34

1  instructions allowed the jury to find petitioner guilty based upon a preponderance of the evidence

2  standard.  (Id.)  Petitioner contends that taking the jury instructions as a whole resulted in

3  "confusion, not clarity, . . . because the jury could believe the unproved information was sufficient

4  to support an inference, the elements of the charged offense have been established.  Because the

5  jury would not expect the trial court to permit an unwarranted or irrational inference."  (Petition at

6  58.)

7  The jury was properly instructed.  The jury was directed that the prosecution had

8  the burden of proving petitioner guilty beyond a reasonable doubt.  (RT 192.)  The jury was

9  instructed as to the proper definition of reasonable doubt.  (RT 192-93.)  The jury was properly

10  instructed as to the elements of the crimes and were given the appropriate definitions.  (RT 193-

11  98.)  The jury was instructed on determining the believability of a witness.  (RT 189-90.)

12  Because the jury was properly instructed as to the burden of proof, this claim must also fail.

13  H.  Conclusion

14  For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's

15  application for a writ of habeas corpus be denied.  These findings and recommendations are

16  submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28

17  U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and

18  recommendations, any party may file written objections with the court and serve a copy on all

19  parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and

20  Recommendations."  Any reply to the objections shall be served and filed within ten days after

21  service of the objections.  The parties are advised that failure to file objections within the

22  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

23  1153 (9th Cir. 1991).

24  DATED:  January 17, 2006.

25

UNITED STATES MAGISTRATE JUDGE

26  001; howe1376.157

35